SHIRLEY E. McFARLIN, ET AL v. WILLIAM T. KELLY, ET AL

5-4853                                          442 S.W. 2d 183

Opinion Delivered June 9, 1969

---

*Henry Woods* for appellants.

*Richard B. Adkisson* for appellees.

JOHN A. FOGLEMAN, Justice. This opinion is filed pursuant to per curiam order of November 15, 1968.

Each of the appellants was a candidate in the general election for a position as delegate to the Arkansas Constitutional Convention from District 22, consisting of Pulaski and Perry Counties. In a petition filed No-

vember 11, 1968,[1] they sought judgment against the Board of Election Commissioners of Pulaski County (appellees here) declaring the election on November 5 void, insofar as the election of delegates to the convention was concerned. They asked that the board be enjoined from certifying the results of the election and holding of the runoff election scheduled for November 19, 1968, as required by Act 42 of 1968 upon the basis of those returns. They also sought a writ of mandamus directing the appellees to hold another election for choice of delegates. The only defendants were the members of the Pulaski County Board of Election Commissioners. Relief was denied and appellants' complaint dismissed by the circuit court after a hearing on November 12. We were asked to stay the runoff election pending appeal filed on November 14.

Relief was sought because of the arrangement of the names of candidates in Pulaski County for the positions of delegate to the convention where more than two aspirants had qualified to have their names on the ballot for a position. Appellants alleged that a drawing for ballot positions in these races had been conducted without adequate notice to any of them, and without any notice at all to some of them. It was their contention that when they learned from a sample ballot how the names would appear upon the voting machines to be used in the election, it was too late for them to take any action other than the filing of their pleading in the circuit court.

The ballot arrangement complained of was alleged to be different from all other races for positions where there were more than two candidates. Appellants showed that in programming the voting machines and preparing ballots in other races in Pulaski County the names of all

---

[1] This was subsequent to the time fixed by law for the furnishing of ballots for absentee voting [Ark. Stat. Ann. § 3-1109 (Repl. 1956)] and for placing of voting machines with ballot labels in the precincts for demonstration [Ark. Stat. Ann. § 3-1711 (Supp. 1967)].

candidates for an office appeared on a horizontal line on the machine. On the other hand, part of the names of candidates for delegate appeared on one horizontal line, the remainder on a line immediately beneath that line. The names of candidates drawn for odd-numbered ballot spots appeared on the top line, and the names of those drawn for even-numbered slots appeared on the lower line. The names of all of the appellants were assigned to the lower line, and none of them received enough votes to be eligible for the runoff election. There was testimony that every "top-line" candidate having the name of no "bottom-line" candidate appearing below his name was successful in attaining a runoff position. Some of the candidates whose names appeared on the bottom line also achieved the runoff.

Evidence was introduced tending to show, and the trial court found, that those candidates whose names appeared on the top line had an advantage greater than the normal advantage held by a candidate who drew a "top-line" ballot position. This condition existed only in the precincts where voting machines were used. Paper ballots were used for absentee voters in Pulaski County. Presumably, paper ballots were used in all precincts in Perry County.

The trial court held that public interest in the election was too great to warrant the granting of any relief to appellants and that any election held on a day other than that fixed by the General Assembly would be void, relying upon our decisions in *Simpson* v. *Teftler,* 176 Ark. 1093, 5 S.W. 2d 350, and *McCoy* v. *Story,* 243 Ark. 1, 417 S.W. 2d 954. While we agree with the trial judge on this point appellants have raised other questions which require a more extensive answer than mere affirmance of the judgment entered.

Insofar as the action was for a declaratory judgment, the necessary jurisdictional requirements were not met. The applicable statute requires that all those whose

interests are affected be made parties to the action. Ark. Stat. Ann. § 34-2505 (Repl. 1962). Those candidates who apparently attained runoff election positions on the basis of the November 5 elections, voters in Perry County, and the Perry County Board of Election Commissioners all had rights and interests that would be materially affected by this action. The failure to make any of them parties was a defect requiring the denial of a declaratory judgment. *Johnson* v. *Robbins*, 223 Ark. 150, 264 S.W. 2d 640; *Laman* v. *Martin*, 235 Ark. 938, 362 S.W. 2d 711; *Southern Farm Bureau Casualty Co.* v. *Robinson*, 236 Ark. 268, 365 S.W. 2d 454; *Block* v. *Allen*, 241 Ark. 970, 411 S.W. 2d 21. Before declaratory relief is granted, it should appear that the relief sought would terminate the controversy. Ark. Stat. Ann. § 34-2505. *Johnson* v. *Robbins*, supra. It appears to us that the granting of the relief sought here and in the trial court would not terminate, but would actually complicate, the controversy.

Declaratory and injunctive relief are remedies to be sparingly used by the courts to prevent the holding of a regularly scheduled election. *Brown* v. *McDaniel*, 244 Ark. 362, 427 S.W. 2d 193. Such remedies should never be resorted to in cases where there is available to those seeking it an adequate pre-election or post-election remedy. See *Orr* v. *Carpenter*, 222 Ark. 716, 262 S.W. 2d 280; *Brown* v. *McDaniel*, supra; *Ellis* v. *Hall*, 219 Ark. 869, 245 S.W. 2d 223. Under Ark. Stat. Ann. § 3-814 (Repl. 1956) appellants had a pre-election remedy. That section provides for the correction of any error in the printing of ballots by order of the circuit judge. If this remedy had proven inadequate, no doubt a petition for mandamus would have been available. While statutory provisions having to do with election procedures [such as Ark. Stat. Ann. §§ 3-810—3-830 (Repl. 1956), §§ 3-1709—3-1718 (Supp. 1967), having to do with preparation of ballots and voting machines] are often considered as only directory after an election, compliance before election is mandatory. *Orr* v. *Carpenter*, supra:

*Henderson* v. *Gladish*, 198 Ark. 217, 128 S.W. 2d 257; *Ellis* v. *Hall*, supra; *Henley* v. *Goggin*, 241 Ark. 348, 407 S.W. 2d 732; *Rich* v. *Walker*, 237 Ark. 586, 374 S.W. 2d 476.

Appellants contend, however, that lack of notice of drawing for ballot position prevented their taking pre-election corrective action. An unfortunate situation contributed to an apparent failure of a substantial number of appellants to receive notice. The latest permissible date for drawing for ballot positions is 40 days before the election. Ark. Stat. Ann. § 3-824 (Repl. 1956). The time to qualify as a candidate for delegate to the convention was also not less than 40 days preceding the general election. Section 4, Act 42 of 1968. By coincidence the drawing was held on the last day for qualifying and employees of appellees obtained the names of those qualifying as candidates in District 22 by going to the office of the Secretary of State. These employees then commenced an effort to give the required notice by telephone. They testified that they left word at the homes or offices of those candidates who were not reached by this method. No doubt this system failed in several instances, as only two of the appellants were present. While it may well be that this notice requirement should be viewed as directory after the election,[2] the appellants were not prevented from having corrective action prior to the election. Testimony that printed facsimile ballots and sample machines were displayed as required by law [Ark. Stat. Ann. § 3-1711 (Supp. 1967)] is undisputed. There was also testimony that a facsimile ballot was published in newspapers published in the county. At least two of appellants who were not present at the drawing but who had seen the ballots and machines in the courthouse appeared before the appellees to protest on October

---

[2]See **Ashby v. Patrick,** 181 Ark. 859, 28 S.W. 2d 55, where the order of a trial court voiding an election because of the arrangement of the ballot was reversed.

28. One of them had been advised of the situation by an employee even before he saw a machine on display. Under these circumstances all candidates had an opportunity to ascertain ballot positions assigned and to apply to the courts for action preceding the election. Post-election remedies were still available to them by way of contest. On oral argument, appellants stated that they were satisfied with the results of the election in Perry County and conceded that these results could not be affected by this action. We do not understand, nor could appellants explain, how the results of the election in Perry County could have been correlated with the results of new elections in Pulaski County so that an integrated result of the election in District 22 could be determined. Neither was any suggestion forthcoming about the time and manner in which the runoff election could have been conducted in Perry County.

Appellants contend that results of the election should be voided because the wrong of which they complain was clear and flagrant, and in nature, so diffusive in its influences, that it rendered the result uncertain so as to defeat a free election under the test announced in *Patton v. Coates*, 41 Ark. 111, and applied in *Baker v. Hedrick*, 225 Ark. 778, 285 S.W. 2d 910. This rule is applicable in election contests, but this proceeding is not of that nature.[3]

Appellants also urge that the trial court should have granted the remedies sought by them because Art. 2, Section 13, of the Arkansas Constitution recites that every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character, in effect denying him due process of law. Our answer to this contention is threefold. In the first

[3]Contests of this sort might be subject to the jurisdiction of the constitutional convention only. Section 8 of Act 42 of 1968 provides that the convention shall be the sole judge of the qualification and election of its own membership. See **Pendergrass v. Sheid,** 241 Ark. 908, 411 S.W. 2d 5.

1244

place, appellants had both pre-election and post-election remedies, as hereinabove pointed out. Secondly, the rights protected are personal and property rights, not political rights as are asserted by appellants here. See *Molloy* v. *Collins,* 66 R.I. 251, 18 A. 2d 639. The distinction in these rights is pointed out in *Walls* v. *Brundidge,* 109 Ark. 250, 160 S.W. 230, Ann. Cas. 1915C 980.

Thirdly, it is the function of the legislature, not the courts, to create rights of action, or provide relief where means of redress have not been designated. *Lucas* v. *Bishop,* 224 Ark. 353, 273 S.W. 2d 397.

If we should have declared the election void, no means of calling an election existing, the selection of delegates representing District 22 might well have been left to the delegates from other districts. Section 3, Act 42 of 1968. This would have been a highly undesirable result and would have been a greater deprivation of the rights of voters in the district than could have resulted from this unfortunate situation.

The judgment and our order per curiam are affirmed.

HOLT, J., not participating.