The Honorable Roy C. "Bill" Lewellen State Senator P.O. Box 287 Marianna, Arkansas 72360
Dear Senator Lewellen:
This is in response to your request for an opinion involving the election of the recorder/treasurer in the City of Madison. Madison is a city of the second class in St. Francis County. You note that for many years the recorder/treasurer in the City of Madison has been elected every two years in conjunction with the election of the mayor. As you note, however, the relevant law, A.C.A. § 14-44-115, provides for a four year term for recorder/treasurers in cities of the second class. That statute provides that: "The qualified voters of cities of the second class shall, on the Tuesday following the first Monday in November 1972, and every four (4) years thereafter, elect a recorder or a recorder-treasurer,[1]
as the case may be, for a term of four (4) years." You state correctly that legally, 1996 is the year in which a recorder-treasurer should be elected in the City of Madison to serve a four year term. You note, however, that the St. Francis County Board of Election Commissioners refuses to place the position on the ballot for the upcoming November 1996 general election, which would correct the problem in the future. Your question is whether the St. Francis County Board of Election Commissioners can refuse to hold an election when A.C.A. § 14-44-115
requires it.
It is my opinion that a court, if faced with the question, would conclude that A.C.A. § 14-44-115 requires an election to be held to elect a recorder/treasurer in the City of Madison in November of 1996. If the County Board of Election Commissioners continues to refuse to place the position on the ballot, however, or if the nearness of the election precludes it from doing so, resort to the judicial process may be necessary in order to resolve the matter.
You have not provided any facts as to why the St. Francis County Board of Election Commissioners is refusing to place the position on the ballot. Nor have I been provided with any facts as to whether any candidates, including the incumbent recorder-treasurer, have qualified to have their names placed on the ballot at the upcoming election. I assume that the incumbent recorder-treasurer was elected at the general election of 1994, the wrong year, in light of your statement that an election has been held in the past every two years. I have not been informed as to whether the incumbent had been previously elected in the correct year in one of these previous elections. All of these facts may bear upon the ultimate resolution of the fact situation you have described, and may require court action to determine. I have set out below, however, the relevant principles of law governing your question.
A similar situation to the one you pose was addressed in Op. Att'y. Gen.90-253 (copy enclosed). In that opinion, a recorder-treasurer of a second class city was elected in 1986, the wrong year for purposes of A.C.A.14-44-115. The recorder-treasurer, however, served an entire four year term under this improper election (at least until November 1990, when the opinion of the Attorney General was sought). The relevant board of election commissioners did not place the position on the ballot in 1990, at the expiration of the recorder-treasurer's four year term, because that also would have been the wrong year. The question was then whether, since the 1986 election was held in the wrong year, there was a vacancy in the office, or whether the incumbent recorder-treasurer should hold over another two years until the position could be placed on the ballot at the correct election year, 1992. The Attorney General concluded that the 1986 election was indeed void, but that fact did not create an automatic vacancy in the office. The improperly elected recorder-treasurer could continue to hold the office, unless ousted by legal action, until his or her successor was properly elected and qualified (in 1992, the correct year).
The question you present is somewhat distinct from the situation presented in Op. Att'y. Gen. 90-253 because, with regard to the City of Madison, the mistake in holding the election in the wrong year was discovered only two years into the term of the improperly elected recorder-treasurer. Again, I assume that the current recorder-treasurer was elected in 1994 to serve a four year term. The question you present is not whether the improperly elected recorder-treasurer can serve an entire four year term and then hold over for another two years (as in Opinion 90-253) but is, rather, whether the improperly elected recorder-treasurer's four year term can be cut short to two years in order to correct the previously mistaken election cycle. It is my opinion that it can be and should be, if there is still time to place the position on the November ballot and if it is possible for candidates to qualify. Again, I have not been provided with any information in this regard, and judicial action may be necessary to determine such questions.[2]
It is clear, however, that an election held any time other than that provided by law is void. See Langston v. Johnson, 255 Ark. 933,504 S.W.2d 349 (1974); McCoy v. Story, 243 Ark. 1, 417 S.W.2d 954 (1967);McDoniel v. Edwards; 198 Ark. 288, 128 S.W.2d 1007 (1939); Simpsonv. Teftler, 176 Ark. 1093, 5 S.W.2d 350 (1928); and McMahan v. State,102 Ark. 12 (1912). Additionally, in my opinion, support for the conclusion that the improperly elected recorder-treasurer's four year term should be cut short to two years to correct the mistake can be found in the case of McMahan v. State, supra. In McMahan, the Attorney General, in conjunction with the prosecuting attorney, brought aquo warranto action to oust the mayor and aldermen of El Dorado, which at that time was a city of the second class. Apparently until 1908, El Dorado was an incorporated town, and in that year became reclassified as a city of the second class. At the first annual election provided by law (in April 1909) after the reclassification, an election was held to elect the city officers of the new second class city. The officers so elected served two years and were reelected at the general city election two years later, in April of 1911. This was contrary to the relevant statute at the time (§ 5589 of Kirby's Digest) which provided that such officers in second class cities were to be elected on the first Tuesday in April 1888 and every two years thereafter. The proper election would have been in 1910 or 1912, but not in 1911. Because, the court stated, the officers were initially elected in 1909, the choices available would have been either to let them serve a three year term (an additional year) until 1912 in order to get on the right election cycle, or to cut their terms short to one year (even though they were elected for two year terms) so that an election could be held in 1910, a proper year. The court stated that the terms of the officers elected in 1909 could and should have been cut short to one year in order to hold the proper election in 1910. The court was influenced in its decision by the fact that such officers in incorporated towns (which El Dorado has just previously been), served one year terms in any event, and as such there was not a great deal of prejudice to the newly elected officers in reducing their two year term to one year. The court then ousted the officers elected in 1911.
It is my opinion, based upon the reasoning in the McMahan case, that when a mistake is discovered to the effect that an election has been held in the wrong year, the term of the officer improperly elected can be cut short in order to correct the mistake. It appears that the choices available in the situation you describe are either to: 1) hold an election for the position in 1996, thereby cutting in half the four year term of the incumbent elected in 1994; or 2) allow the improperly elected incumbent to serve out the four year term and an additional two years, until the year 2000, to correct the mistake.[3] It appears under the previous decisions of the Arkansas Supreme Court that the former option is the more legally defensible, if there is time to implement it. Although this may seem unfair to the improperly elected incumbent recorder-treasurer, who expected to serve a full four year term, it has been held that a person elected at an election held in the wrong year has no legally sustainable claim to the office. See generally Langston,supra. In my opinion, therefore, the incumbent, who was elected in the wrong year, has no legal right to preclude the position from being placed on the ballot in a proper year by insisting upon serving out the entire four year term to which elected. Similarly, the County Board of Election Commissioners has no right to insist upon such action on the officeholder's behalf. Questions may arise, however, at this late date, as to the ability of any person, including the incumbent, to have their name placed on the ballot at the November, 1996 election. Again, resort to the judicial process may be necessary to resolve the issue.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Arkansas Code Annotated 14-44-114 gives the city council of cities of the second class the option of combining the offices of recorder and treasurer.
[2] If it is too late to place the position on the November 1996 election ballot, or no persons have qualified to be on that ballot, questions may arise as to whether the incumbent recorder-treasurer, because elected in the wrong year, can continue to serve. If his or her sole claim to the office is the 1994 election or any other election held in the wrong year, it appears the incumbent would be subject to removal from office in a legal proceeding brought for that purpose, but could continue to serve in the absence of such a proceeding. See McMahan v.State, supra and Op. Att'y No. 90-253. If, however, the incumbent has held office for a number of two year terms and was properly elected at at least one election in the correct year, he or she may lawfully hold over under Arkansas Constitution, art. 19, § 5 if no one else is elected to the position and may not be ousted. See generally, Wood v. Miller,154 Ark. 318, 242 S.W.2d 573 (1922), Hill v. Goodwin, 82 Ark. 341 (1907) andMcDoniel, supra.
[3] This would be true assuming no one acts or could act to oust the incumbent from office, with the vacancy being filled pursuant to law for the interim period before November, 2000.